**Caruso Glynn, llc**
Attorneys for Plaintiff
*Anna Maria Campo*
36 Peck Slip
New York, New York 10038
(718) 570-3338
File No.: 12.092613.01
Lawrence C. Glynn (LG-6431)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ANNA MARIA CAMPO,                                    Case No.:   13 Civ. 6180(JFB)(AKT)

                             Plaintiff,              **AMENDED VERIFIED**
                                                     **COMPLAINT**

        -against-

AUTO GALLERY IMPORTS INC.
SAM KAYE and GM FINANCIAL,

                             Defendants.
-----------------------------------------------------------x

        Plaintiff, Anna Maria Campo (hereafter "Campo" or "Plaintiff"), by her attorneys **Caruso**

**Glynn, LLC**, complaining of the Defendants, alleges upon information and belief that:

### Nature of Claim

        1.      This is an action for actual damages, statutory damages, punitive damages, incidental

and consequential damages, attorney's fees and the costs of this action against defendants AUTO

GALLERY IMPORTS INC. ("AGI") and GM FINANCIAL ("GMF") pursuant to the Magnuson-

Moss Warranty Act (the "MMWA"), 15 U.S.C. §2310, violations under §198-b of the New York

General Business Law (the "Used Car Lemon Law"), Deceptive Trade Practices under New York

General Business Law §349, fraud in the inducement, promissory estoppel and intentional infliction

of emotional distress.

**The Parties**

2.      At all material times, plaintiff is an individual who resides in Rockland County in the State of New York.

3.      At all material times, AGI was and now is a New York corporation or other business entity doing business within the State of New York with a principal place of business at 500 Old Country Road, Westbury, NY 11590.

4.      At all material times, AGI was and now is a New York corporation or other business entity transacting business within the State of New York with a principal place of business at 500 Old Country Road, Westbury, NY 11590.

5.      At all material times, Sam Kaye ("Kaye") was and now is an individual who resides within the State of New York.

6.      At all material times, GMF is a financial institution with a principal place of business located at 801 Cherry Street, Suite 3500, Fort Worth, TX 76102.

**Jurisdiction**

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1337 and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367.

**Facts**

8.      In late August, 2013, Plaintiff responded to an advertisement listed on www.autotrader.com for a used 2012 Porsche Panamera ("the vehicle") being sold by defendant AGI.

9.      The advertised price for the vehicle was $66,900.00.

2

10.     In late August 2013, Plaintiff met with defendant's salesman, Joseph Michelli ("Michelli") to look at, test drive and negotiate the price for the vehicle.

11.     Plaintiff was told by Michelli that she needed to leave a deposit of $200.00 to hold the vehicle.

12.     Plaintiff and Michelli negotiated the price of the vehicle to $61,900.00. A copy of Michelli's business card with the price and description of the vehicle on the back has been annexed hereto as Exhibit A.

13.     Plaintiff returned to AGI on September 2, 2013 to look at the car again with her mother and try to negotiate the price down further.

14.     Michelli was not at AGI on September 2, 2013 and Plaintiff met with a manager named Steve.

15.     On September 2, 2013, Steve told Plaintiff that the price of $61,900.00 was the lowest AGI could do for re-sale.

16.     On September 3, 2013, Plaintiff returned to AGI's location in Westbury, New York to complete the sale, execute necessary documents and take possession of the vehicle.

17.     On September 3, Plaintiff agreed to the price of $61,900.00 for the vehicle.

18.     At that time, Plaintiff made an additional down payment of $20,000.00 and AGI promised to arrange financing of the balance of the purchase price through a third-party lender.

19.     The Retail Installment Contract ("RISC") prepared by defendant and dated September 3, 2013 indicated a cash price of $75,073.00 which purportedly included sales tax in the amount of $6,071.96. A copy of the Retail Installment Contract has been annexed hereto as Exhibit B.

20.     Subtracting the purported sales tax amount of $6,071.96 from the purported cash price including sales tax of $75,073.00 yields a purported price of the vehicle, pre-tax, of $69,001.04.

21.     The sales tax rate for Rockland County where Plaintiff resides is 8.375%.

22.     Defendant charged sales tax in the amount of $6,071.96, which actually correlates to a purchase price of $72,501.01 ($6,071.96/.08375), not $69,001.04.

23.     Conversely, in order to arrive at a final price of $75,073.00 inclusive of sales tax, the purchase price would have to be $69,271.51.[1]

24.     Plaintiff inquired as to why the price had increased by $7,101.01 from the agreed upon price of $61,900.00 to the purported price of $69,001.04 not including taxes.

25.     Plaintiff was told by Sam Kaye ("Kaye") of AGI that the increase was for "the extended warranty, bank fees, registration, title, etc."

26.     The RISC lists charges of $322.00 for "Government License and/or Registration Fees" and $3,500.00 for a "Service Contract," totaling $3,822.00. Ex. B.

27.     Subtracting this amount from the $7,101.01 increase over the agreed upon price of $61,900.00 leaves $3,279.04 of unexplained charges.

28.     Plaintiff was never advised on September 3, 2013 that the increase in price was due to her credit score.

29.     Plaintiff was never advised on September 3, 2013 that she was being charged $3,279.04 to "buy points" to lower the rate.

---

[1] The equation is $1x + (.08375)(x) = \$75,073.00$, where x = the purchase price. Solving for x yields a purchase price of $69,271.51.

30.    Plaintiff trusted that what she was told about the increased cost was truthful and agreed to complete the transaction on September 3, 2013.

31.    Plaintiff was never provided with a copy of the bill of sale nor her credit application.

32.    Plaintiff took possession of the vehicle on September 3, 2013.

33.    Within the first week, Plaintiff noticed that the vehicle's fluid levels were low.

34.    Within the first week, Plaintiff noticed that the vehicle required an oil change.

35.    Within the first week, the vehicle's onboard computer indicated "CHANGE OIL NOW LEVEL REACHED TO A MINIMUM."

36.    Within the first week, Plaintiff noticed that the under body cover of the vehicle was ripped off.

37.    Within the first week, Plaintiff was driving on the FDR Drive and noticed that the under body cover of the vehicle was dragging along the highway.

38.    Within the first week, Plaintiff noticed that one of the tires was different and did not match the other three tires. When Plaintiff brought the car back to replace the worn, non-conforming tire, AGI replaced all four tires with used, worn tires from another one of its cars. As a result, the car has poor traction, veers while driving, especially on the Tapan Zee Bridge, and slips when making turns on wet roads.

39.    Prior to purchasing the vehicle, Plaintiff noticed water damage on the side molding. Plaintiff was told by Mr. Michelli that AGI would fix the stain and to just call the service department.

40.    Plaintiff returned the car on numerous occasions throughout September and October 2013 for AGI to make necessary repairs.

41.     Despite Mr. Michelli's promise, AGI refused to fix the water stain on the molding.

42.     As of October 3, 2013, AGI had still not fixed the damaged under-carriage and the vehicle remained unsafe to drive a month after Plaintiff purchased it.

43.     On September 24, 2013, Plaintiff returned the vehicle to AGI and informed Steve, the sales manager, that she wished to revoke her acceptance and asked for her down payment to be refunded.

44.     AGI refused to take back the vehicle and refund Plaintiff's money.

45.     Also on September 24, 2013, Plaintiff again asked the finance manager, Kaye, the reason for the increased cost from $61,900.00 to $69,001.04.

46.     Plaintiff was told at that time by Kaye that the increased cost for the vehicle represented, *inter alia*, an acquisition fee of $1,895.00, a dealer prep fee of $995.00 and bank fees of $595.00 for a total of $3,485.00.

47.     The RISC makes no mention of an acquisition fee, a dealer prep fee or bank fees.

48.     Kaye also told Plaintiff on September 24, 2013 at approximately 2:30 p.m., that the remainder of the increase in price was due to Plaintiff's low credit score.

49.     At the time and place aforesaid, Kaye told Plaintiff that he had to "buy points" to bring the interest rate down to 9.75%.

50.     At the time and place aforesaid, Kaye told Plaintiff that the cost to "buy points" to get the rate down to 9.75% was $4,000.00.

51.     Given the lack of transparency in the RISC, the significant increase in price from the agreed upon price of $61,900.00 and the shifting explanations for the increase, plaintiff believed that she had been the victim of fraud.

52.     Plaintiff contacted defendant GMF to inquire about the terms of her loan.

53.     Plaintiff specifically inquired as to whether it was necessary for AGI to "buy points" at a cost of $4,000.00 in order to get Plaintiff's rate down to 9.75%.

54.     Plaintiff was informed by GMF that no such fee was charged for the 9.75% and that 9.75% was the approved rate given her credit score and financial history.

55.     On October 14, 2013, Plaintiff's counsel sent a certified letter to AGI advising that Plaintiff was revoking acceptance of the vehicle and demanding a full refund of Plaintiff's down payment.

56.     On October 28, 2013, Sam Kaye of AGI called Plaintiff and told her that he wanted to "go over the numbers with her."

57.     Plaintiff replied that she simply wanted her money back and that she did not want the car due to its many defects.

58.     Shortly thereafter, on October 28, 2013, AGI's service manager, Henry Mendez called and said that he needed Plaintiff to bring the vehicle in so that he could measure for new tires and that he didn't want to order the wrong ones and be stuck with expensive tires.

59.     Plaintiff agreed and brought the vehicle back to AGI on October 28, 2013.

60.     When she arrived at AGI on October 28, 2013, Plaintiff was not met by Henry Mendez but was instead confronted by Kaye who pleaded with her not to proceed with litigation.

61.     Kaye pleaded with Plaintiff to go over the numbers again with him.

62.     Plaintiff told Kaye that she knew there was never any "buy down" of points and that AGI defrauded her of her money.

63.   Kaye continued to plead for Plaintiff to give him five minutes to go over the numbers and if a refund of a portion of the purchase price was due, AGI would pay it.

64.   Plaintiff informed Kaye for the third time that she was revoking acceptance of the car and demanded a full refund of her down payment plus her first month payment to GMF and the cost of an alignment that she was required to have done, due to the vehicle being delivered to her from AGI out of alignment.

65.   Kaye refused to take the vehicle back and refund Plaintiff's money.

66.   Kaye then became extremely aggressive, violent and angry.

67.   Fearful of Kaye's aggressive, violent and angered state, Plaintiff left the AGI building.

68.   A visibly enraged Kaye proceeded to follow Plaintiff outside where he accosted and verbally threatened her not to file a law suit.

69.   As a result of Kaye's aggressive, violent, and abusive actions, Plaintiff was extremely nervous, distraught and very fearful for her safety.

**First Cause of Action**
**Fraud in the Inducement**

70.   On or about September 3, 2013, AGI misrepresented a material fact to Plaintiff, *to wit*, the true cost of the vehicle including all fees associated with the purchase of the vehicle.

71.   On or about September 3, 2013, AGI, misrepresented a material fact to Plaintiff, *to wit*, the reason for an additional charge of $3,279.04.

72.     This misrepresentation of a material fact was made orally by AGI's manager, Steve, who when asked about the increase stated on September 3, 2013 that the additional charges were for "the extended warranty, bank fees, registration, title, etc."

73.     Thereafter, on September 24, 2013, AGI's finance manager, Sam Kaye, represented to Plaintiff that an additional charge of $4,000.00 was necessary to "buy points" to lower Plaintiff's rate.

74.     This statement by Sam Kaye was made to Plaintiff at approximately 2:30 p.m. while Plaintiff was physically at the AGI dealership located at 500 Old Country Road, Westbury, New York, and Sam Kaye was reached by other AGI employees via cell phone to explain to Plaintiff the nature of this charge.

75.     This representation by Sam Kaye, i.e., that Plaintiff had to pay AGI $4,000.00 in additional funds in order to "buy points" to lower her loan rate, was soon found to be false.

76.     So too was the original statement made by Steve on September 3, 2013, that the additional charge was for "the extended warranty, bank fees, registration, title, etc.," as the extended warranty is listed on the RISC as $3,500.00, registration and title is listed as $322.00, and there was no "bank fees" listed anywhere therein.

77.     The additional $3,279.04 was nothing more than AGI lining its pockets upon the false pretense that it was for "bank fees" or to "buy points."

78.     Defendants knew at the time these statements were made that charging a customer an amount of $3,279.04 under the pretense that it was for "bank fees" or to "buy points" to lower the loan rate, is unethical and in bad faith.

79.     Defendants knew at the time these statements were made that charging a customer an amount of $3,279.04 under the pretense that it was for "bank fees" or to "buy points" to lower the loan rate, is a criminal act of theft.

80.     Defendants deceived Plaintiff into paying this additional $3,279.04 by lying to her that this amount was necessary for some undisclosed "bank fee" or to "buy points" in order to reduce the rate of her loan.

81.     The oral promises made by AGI to Plaintiff, *to wit*, that the additional $3,279.04 was for "bank fees" or to "buy points" were collateral to the terms of the sale of the vehicle.

82.     As a result of the foregoing, Plaintiff has sustained actual damages as nearly as can be determined in the amount of $3,279.04.

83.     In addition, as a result of AGI's wanton dishonesty and criminality directed at Plaintiff and, upon information and belief, the general public, Plaintiff demands punitive damages be awarded in an amount to be determined at the trial of this action.

## Second Cause of Action
### Promissory Estoppel

84.     Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "83" with the same force and effect as though more fully set forth herein at length.

85.     On or about September 3, 2013, AGI promised to Plaintiff that the true cost of the vehicle included a $3,279.04 charge for "bank fees," when in reality AGI unilaterally renegotiated the purchase price of the car and proceeded to line its pockets under false pretense.

10

86.     On or about September 24, 2013, AGI promised to Plaintiff that the true cost of the vehicle included a $4,000.00 charge to "buy points" in order to get Plaintiff's loan rate down to 9.75%.

87.     Plaintiff reasonably and foreseeably relied upon the September 3, 2013 promise in making her decision to purchase the vehicle.

88.     But for this assurance by AGI on September 3, 2013 that the additional $3,279.04 was for "bank fees" as opposed to AGI syphoning more money from Plaintiff, Plaintiff would not have purchased the vehicle.

89.     Plaintiff has since learned that there was no need for this $3,279.04 "bank fee" nor was there any need for a $4,000.00 charge to "buy points" and that, in fact, GMF had already approved Plaintiff for a loan at the rate of 9.75%.

90.     As a result of Plaintiff's reasonable and foreseeable reliance upon the promises made by AGI as to the nature of the $3,279.04 fee applied to the purchase price of the vehicle, Plaintiff has sustained actual damages as nearly as can be determined in the amount of $3,279.04.

### Third Cause of Action
### Deceptive Trade Practices under New York G.B.L. §349

91.     Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "90" with the same force and effect as though more fully set forth herein at length.

92.     Defendant committed deceptive acts or practices in the conduct of its business of selling used cars.

93.     Specifically, Defendant deceived Plaintiff and others with lower credit into paying additional fees described as "bank fees" or to "buy points" which were never disclosed in the RISC or bill of sale.

94.     In reality, there was no "bank fee" and no such payment was ever made by AGI to the third-party lender, GMF to buy points, nor was such payment ever demanded or required from GMF.

95.     AGI's deception, *to wit*, exacting additional monies from Plaintiff under the pretense of "bank fees" or to lower Plaintiff's finance charges, was targeted at not only Plaintiff but, upon information and belief, other purchasers with distressed or below average credit.

96.     General Business Law §349 prohibits the use of deceptive or unfair practices in connection with the sale of an automobile to a consumer.

97.     The various misrepresentations and improper disclosure set forth above were materially misleading and Plaintiff has suffered actual injury as a result.

98.     As a result of AGI's deceptive trade practices, Plaintiff has sustained actual damages as nearly as can be determined in the amount of $3,279.04.

99.     In addition, as a result of AGI's deceptive trade practices, Plaintiff is paying considerably more for the vehicle than agreed upon and paying interest charges in excess of the interest charges she would have been paying had it not been for the Defendant's conduct.

100.     Thus, Plaintiff has been and continues to be damaged as a result of Defendant's deceptive and misleading practices.

101.     Plaintiff is entitled to damages and attorney's fees as a result of Defendant's violation of §349.

102.    Plaintiff hereby demands that all attorney's fees, costs and other fees of this action be borne by Defendant and that the Court award Plaintiff punitive damages in an amount to be determined at trial.

**Fourth Cause of Action**
**Deceptive Trade Practices under New York G.B.L. §349 - Part II**

103.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "102" with the same force and effect as though more fully set forth herein at length.

104.    Defendant committed deceptive acts or practices in the conduct of its business of selling used cars.

105.    Specifically, Defendant deceived Plaintiff and others into purchasing an extended warranty promising to cover the vehicle for all repairs for 100,000 miles, including any major repairs.

106.    Defendant charged Plaintiff $3,500.00 for a "service contract" which was explained to Plaintiff as the aforementioned extended warranty.

107.    In reality, the warranty provided was only for 36,000 miles or 36 months, whichever came first.

108.    AGI's deception, *to wit*, exacting additional monies from Plaintiff under the pretense of a 100,000 mile extended warranty and couching it as a "service contract", was targeted at not only Plaintiff but, upon information and belief, other purchasers of AGI's used vehicles.

109.    General Business Law §349 prohibits the use of deceptive or unfair practices in connection with the sale of an automobile to a consumer.

13

110. The various misrepresentations and improper disclosure set forth above were materially misleading and Plaintiff has suffered actual injury as a result.

111. As a result of AGI's deceptive trade practices, Plaintiff has sustained actual damages as nearly as can be determined in the amount of $3,500.00.

112. In addition, as a result of AGI's deceptive trade practices, Plaintiff is paying considerably more for the vehicle than agreed upon and paying interest charges in excess of the interest charges she would have been paying had it not been for the Defendant's conduct.

113. Thus, Plaintiff has been and continues to be damaged as a result of Defendant's deceptive and misleading practices.

114. Plaintiff is entitled to damages and attorney's fees as a result of Defendant's violation of §349.

115. Plaintiff hereby demands that all attorney's fees, costs and other fees of this action be borne by Defendant and that the Court award Plaintiff punitive damages in an amount to be determined at trial.

**Fifth Cause of Action**
**Breach of Express Warranty**
**Pursuant to the Magnuson-Moss Warranty Act**

116. Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "115" with the same force and effect as though more fully set forth herein at length.

117. On or about September 3, 2013, Plaintiff took possession of the vehicle and shortly thereafter experienced numerous defects which substantially impacted the use, value and/or safety of the vehicle.

14

118.    Plaintiff avers that as a result of the ineffective repair attempts made by AGI, the vehicle cannot be utilized for personal, family and household use as intended by Plaintiff at the time of acquisition.

119.    The specific non-conformities which have not been corrected by AGI relate to the under-body cover which is hanging and drags along the road, used/worn tires and improper alignment.

120.    Plaintiff has provided Defendant sufficient opportunity to repair and/or replace the defective components in the vehicle.

121.    Despite a reasonable number of attempts by Plaintiff to have Defendant cure the defects, Defendant AGI has refused to repair and/or replace the defective components described herein.

122.    Plaintiff has justifiably lost confidence in the vehicle's safety and reliability, and said non-conformities have substantially impaired the value of the vehicle.

123.    Said non-conformities could not reasonably have been discovered by Plaintiff prior to Plaintiff's acceptance of the vehicle.

124.    Plaintiff contacted the Defendant on numerous occasions about the non-conformities and stated to Defendant that she was revoking acceptance of the vehicle.

125.    On September 24, 2013, Plaintiff returned the vehicle to AGI and stated that she wanted her down payment refunded.

126.    At the time of revocation on September 24, 2013, the vehicle was in substantially the same condition as at delivery.

15

127.    Defendant has refused Plaintiff's revocation of acceptance, and has refused to provide Plaintiff with the remedies to which Plaintiff is entitled upon revocation.

128.    The vehicle remains in a defective and unmerchantable condition, and continues to exhibit the above mentioned defects which substantially impair its use, value and/or safety.

129.    Plaintiff paid $3,500 for an extended warranty which she was told by AGI covered all repairs to the vehicle for 100,000 miles.

130.    Plaintiff later learned that the warranty was only for 36,000 miles or 36 months, whichever comes first.

131.    Upon contacting the company set forth on the warranty application, Plaintiff further learned that there was no record of any such warranty having been purchased.

132.    New York General Business Law §198-b requires AGI to provide Plaintiff with a 90 day or 4,000 mile (whichever comes first) warranty.

133.    As such, the defects Plaintiff complains of arose during the aforementioned warranty periods and Defendant was timely informed of said defects.

134.    The defects are "covered parts" as defined in §198-b of the New York General Business Law.

135.    The Defendant failed to honor the terms of said warranty by refusing to correct said defects and as a result of Defendant's failure to honor the warranty, Plaintiff cannot utilize the vehicle.

136.    Plaintiff has been and will continue to be financially damaged due to Defendant's intentional, reckless, wanton and negligent failure to comply with the provisions of its warranty.

16

137.    Plaintiff is entitled to a full refund from Defendant of the purchase price including all finance charges as well as reasonable attorney's fees.

**Sixth Cause of Action**
**Breach of General Business Law §198-b**
**(Used Car "Lemon Law")**

138.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "137" with the same force and effect as though more fully set forth herein at length.

139.    Defendant failed to repair the defects within a reasonable period of time or within a reasonable number of attempts.

**Seventh Cause of Action**
**Breach of Implied Warranty**
**Pursuant to the Magnuson-Moss Warranty Act**

140.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "139" with the same force and effect as though more fully set forth herein at length.

141.    Plaintiff's vehicle was subject to an implied warranty of merchantability as defined in 15 U.S.C. §2301(7) running from the Defendant to the intended consumer, Plaintiff herein.

142.    Defendant is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff.

143.    Defendant is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Defendant has entered into a contract in writing

to perform services relating to the maintenance or repair of a motor vehicle within ninety (90) days of a sale.

144.    Pursuant to 15 U.S.C. §2308, Plaintiff's vehicle was impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which it was intended.

145.    The vehicle was warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of it contained in the contracts and labels.

146.    The above described defects and non-conformities present in the vehicle render it unmerchantable, unsafe, and thereby not fit for the ordinary and essential purpose for which it was intended as represented by Defendant.

147.    As a result of the breaches of implied warranty by Defendant, Plaintiff is without the reasonable value of the vehicle.

148.    As a result of the breaches of implied warranty by Defendant, Plaintiff has suffered and will continue to suffer various damages.

149.    If Plaintiff prevails, she is also entitled to an award of reasonable attorney's fees, costs and interest under 15 U.S.C. §3210(d)(2).

**Eighth Cause of Action**
**Revocation of Acceptance Pursuant to §2310(d)**
**of the Magnuson-Moss Warranty Act**

150.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "149" with the same force and effect as though more fully set forth herein at length.

18

151.    The defects and non-conformities present in the vehicle substantially impaired the value of the vehicle to Plaintiff.

152.    After providing more than a reasonable number of attempts to repair the defects and non-conformities, Plaintiff notified Defendant that she was revoking her acceptance of the vehicle.

153.    Plaintiff may seek the remedy of revocation of acceptance under 15 U.S.C. §2310(d) and based upon such revocation, Plaintiff is entitled to the return of the purchase price in exchange for the return of the vehicle, plus attorney's fees, costs and interest.

**Ninth Cause of Action**
**Liability of GM Financial**

154.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "153" with the same force and effect as though more fully set forth herein at length.

155.    Federal Law (16 C.F.R. part 433) requires that all consumer installment contracts contain the following provision:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

156.    GMF is the holder of the RISC for the purchase of Plaintiff's vehicle. It is bound by the terms quoted in Paragraph 154 above, subjecting it to all claims and defenses which Plaintiff has asserted against the Defendant.

157.    Plaintiff used the funds provided under the RISC in order to obtain the vehicle.

19

158.    GMF has entered into a master loan agreement with AGI whereby AGI submits various documents, including a credit application, to GMF for approval of various consumer loans. The documents submitted to GMF upon which the approval of such loans are contingent are referred to as a "loan package."

159.    Once GMF approves the terms of a loan, it has agreed, pursuant to the master loan agreement, to take assignment of a retail installment contract, subject to other documents being properly executed and delivered to GMF.

160.    In the instant matter, GMF reviewed the loan package for the Plaintiff's loan and made its determination to accept the assignment of the RISC based on the documents contained in the loan package.

161.    GMF is liable to the Plaintiff under the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action since GMF is subject to all claims and defenses that Plaintiff has against AGI under 16 C.F.R. part 433 and the specific language contained in the RISC.

### Tenth Cause of Action
### Intentional Infliction of Emotional Distress as Against Sam Kaye

162.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "161" with the same force and effect as though more fully set forth herein at length.

163.    On October 28, 2013, Plaintiff was lured back to AGI under the pretext that AGI's service manager, Henry Mendez, would measure the vehicle for new tires, to replace the used, worn and unsafe tires originally provided.

164.    Upon entering the AGI building, Plaintiff was instead met by Kaye.

20

165.    Kaye pleaded with Plaintiff to "go over the numbers again" with him.

166.    Plaintiff told Kaye that she knows there was never any "buy down" of points and that AGI defrauded her of her money.

167.    Kaye continued to plead for Plaintiff to give him five minutes to go over the numbers and if a refund of a portion of the purchase price was due, AGI would pay it.

168.    Plaintiff informed Kaye for the third time that she was revoking acceptance of the car and demanded a refund.

169.    Kaye refused to take the vehicle back and refund Plaintiff's money.

170.    Kaye then became extremely aggressive, violent and angry.

171.    Fearful of Kaye's aggressive, violent and angered state, Plaintiff left the AGI building.

172.    A visibly enraged Kaye then followed Plaintiff outside where he accosted and verbally threatened her not to file a law suit.

173.    As a result of Kaye's aggressive, violent, and abusive actions, Plaintiff was extremely nervous, distraught and very fearful for her safety.

174.    Plaintiff became extremely frightened and victimized.

175.    Kaye's threats, bullying, intimidation, anger and violent nature was purposeful and intended to silence and intimidate Plaintiff from filing a lawsuit.

176.    As a result of this Kaye's aggression, bullying, violence and/or anger, Plaintiff genuinely perceived that she was in imminent danger.

177.    Kaye's actions on October 28, 2013 were extreme, outrageous, atrocious, uncivilized and intolerable.

178.    Furthermore, the course of conduct on the part of Kaye and his scheme to defraud Plaintiff, taken in its totality, demonstrates conduct which is extreme, outrageous, atrocious, uncivilized and intolerable.

178.    Kaye undertook these actions to emotionally hurt Plaintiff.

179.    Kaye undertook these actions to intimidate Plaintiff.

180.    Kaye knowingly, willfully and/or recklessly disregarded the substantial probability that his actions would cause Plaintiff severe emotional distress.

181.    Plaintiff felt traumatized, violated, frightened, depressed and distraught as a result of Kaye's willful and malicious threatening behavior and intimidation.

182.    Plaintiff has and will continue to suffer from symptoms of post traumatic stress and other physical, mental and emotional injuries as a result of Kaye's actions aforesaid.

183.    As a result of the foregoing, Plaintiff has sustained damages as nearly as same can now be estimated in the amount of Two Million Dollars ($2,000,000.00).

**Eleventh Cause of Action**
**Intentional Infliction of Emotional Distress as Against AGI**

184.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "183" with the same force and effect as though more fully set forth herein at length.

185.    At all times relevant, Kaye was acting within the scope of his employment at AGI.

186.    An act is considered to be within the scope of employment if it is performed while the employee is engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or incidental to such employment (*see Oliva v. City of New York*, 297 A.D.2d

789, 748 N.Y.S.2d 164 (2d Dept. 2002); *Smith v. Midwood Realty Assoc.*, 289 A.D.2d 391, 734

N.Y.S.2d 237 (2d Dept. 2001); *Felberbaum v. Weinberger*, 54 AD3d 717 (2d Dept. 2008).

187. An employer is vicariously liable for the torts of its employee, even when the

employee's actions are intentional, if the actions were done while the employee was acting within

the scope of his employment. *Riviello v. Waldron*, 47 N.Y.2d 297 (1979); *Brancato v. Dee & Dee*

*Purchasing*, 296 A.D.2d 518 (2d Dept. 2002).

188. As a result of Kaye's aggressive, bullying, violent, and abusive actions, Plaintiff was

extremely nervous, distraught and very fearful for her safety.

189. Plaintiff became extremely frightened and victimized.

190. Kaye's threats, threatening tone, intimidation, anger and violent nature was

purposeful and intended to silence and intimidate Plaintiff from filing a lawsuit against his employer,

AGI.

191. As a result of this Kaye's aggression, bullying, violence and/or anger, Plaintiff

genuinely perceived that she was in imminent danger of bodily harm.

192. Kaye's actions were extreme, outrageous, atrocious, uncivilized and intolerable.

193. Kaye undertook these actions to emotionally hurt Plaintiff.

194. Kaye undertook these actions to intimidate Plaintiff and prevent her from filing a

legitimate lawsuit against his employer, AGI.

195. Furthermore, the course of conduct on the part of AGI to defraud Plaintiff, taken in

its totality, demonstrates conduct which is extreme, outrageous, atrocious, uncivilized and

intolerable.

196.    AGI knowingly, willfully and/or recklessly disregarded the substantial probability that its actions would cause Plaintiff severe emotional distress.

197.    Plaintiff felt traumatized, violated, frightened, depressed and distraught as a result of Kaye's willful and malicious threats, aggression and violent behavior.

198.    Plaintiff has and will continue to suffer from symptoms of post traumatic stress and other physical, mental and emotional injuries as a result of AGI's actions aforesaid.

199.    As a result of the foregoing, Plaintiff has sustained damages as nearly as same can now be estimated in the amount of Two Million Dollars ($2,000,000.00).

WHEREFORE, Plaintiffs demand judgment against Defendants AGI, Kaye and GMF as follows:

a)    On the First Cause of Action for Fraud in the Inducement, actual and punitive damages as well as an award of reasonable attorney's fees, costs and expenses;

b)    On the Second Cause of Action for Promissory Estoppel, actual damages as well as an award of reasonable attorney's fees, costs and expenses;

c)    On the Third Cause of Action for Deceptive Trade Practice under New York General Business Law §349 for damages in an amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses;

d)    On the Fourth Cause of Action for Deceptive Trade Practice under New York General Business Law §349 for damages in an amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses;

e)      On the Fifth Cause of Action for Breach of Express Warranty under the Magnuson-Moss Warranty Act for damages in an amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses;

f)      On the Sixth Cause of Action for Breach of New York General Business Law §198-b ("Used Car Lemon Law"), a refund of the purchase price, incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses;

g)      On the Seventh Cause of Action for Breach of Implied Warranty under the Magnuson-Moss Warranty Act for damages in an amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses;

h)      On the Eighth Cause of Action for Revocation of Acceptance Pursuant to §2310(d) of the Magnuson-Moss Warranty Act, a refund of the purchase price, incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses;

i)      On the Ninth Cause of Action, as set forth above in the paragraphs (a) through (h);

j)      On the Tenth Cause of Action against Kaye for Intentional Infliction of Emotional Distress, judgment for the amount of $2,000,000.00;

k)      On the Eleventh Cause of Action against AGI for Intentional Infliction of Emotional Distress, judgment for the amount of $2,000,000.00;

l)      Punitive damages, and

m)      That this Court will grant to Plaintiff such other and further relief as may be just and

proper, including an award of attorney's fees, prejudgment interest and costs.

Dated:  New York, New York
        November 14, 2013

                        Yours, etc.,

                        **Caruso Glynn, llc**
                        Attorneys for Plaintiff
                        *Anna Maria Campo*

                        By:   /s/ *Lawrence C. Glynn*
                        Lawrence C. Glynn
                        36 Peck Slip
                        New York, New York 10038
                        (718) 570-3338
                        File No.:   12.092613.01

26

## **<u>ATTORNEY'S VERIFICATION</u>**

Lawrence C. Glynn, under the penalties of perjury, hereby affirms that I am a member of the law firm of **Caruso Glynn, llc**, that I have read the foregoing Complaint and know the contents thereof, and that the same is true to my own knowledge except as to matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true. The source of my information are file records and phone conversations with plaintiff. The reason this verification is made by deponent and not by plaintiff is because plaintiff does not reside within the County where hers attorneys have an office.

Dated: New York, New York
        November 14, 2013

By: ___/s/ *Lawrence C. Glynn*___
        Lawrence C. Glynn